Filed 12/19/22  In re A.W. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re A.W., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B321007 (Super. Ct. No. J072943) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>D.W. et al.,<br><br>     Defendant and Appellant. | |

B.W. (Mother) and D.W. (Father) appeal from the juvenile court's order terminating their parental rights to their daughter, A.W., and selecting adoption as the permanent plan.  (Welf. &

Inst. Code,[1] § 366.26.)  They contend the court erred in finding the beneficial parental relationship exception did not apply.  (*Id*., subd. (c)(1)(B)(i).)  We affirm.

FACTUAL AND PROCEDURAL HISTORY

When A.W. was born, she was placed in the neonatal intensive care unit (NICU) for over three weeks due to in utero drug exposure.  A.W. suffered withdrawal symptoms and required methadone administration for several weeks after birth.  After she was discharged from the hospital, she was placed in a foster home, where she has lived ever since.  A.W. has never lived with Mother and Father.

In October 2021, the Ventura County Human Services Agency (the Agency) filed a juvenile petition (§ 300) alleging that Mother tested positive for fentanyl on multiple occasions while pregnant with A.W.  The petition also alleged that Mother had a history of substance abuse and suffered mental health issues.  The petition alleged Father had a history of substance abuse and knew or reasonably should have known about Mother's substance abuse.  The petition further alleged that two of A.W.'s half-siblings were previously declared dependents of the court.  One sibling was declared a dependent due to the child's prenatal substance exposure, Mother's substance abuse, and her mental health issues.  The other sibling was declared a dependent due to Father's substance abuse, incarceration, and failure to provide care.

At the jurisdiction/disposition hearing, the juvenile court sustained the petition and bypassed Mother and Father's reunification services.  It ordered a supervised visitation schedule

---

[1]Further unspecified statutory references are to the Welfare and Institutions Code.

2

of twice a week to remain the same.  The court set a hearing pursuant to section 366.26.

*Section 366.26 report and pretrial memorandum*

In its section 366.26 report, the Agency summarized the contacts and visits that occurred from October 2021 to February 2022.  Mother and Father had supervised one-hour visits twice a week.  Generally, the "visits occur[red] without incident" and "usually consist[ed] of feeding, changing diaper[s], talking and giving affection to child, carrying . . . and interacting with her during wake time."

The Agency reported Mother and Father "have shown consistency in visitation" and there was "no question that the parents love and care for [A.W.] as they are loving and affectionate during visits."  However, the report noted that on a recent visit, A.W. cried at various times during the visit and appeared "inconsolable at times."  The report stated "it is evident that [A.W.] is growing up and possibly beginning to recognize unfamiliar places and faces.  The prospective adoptive mother monitored [A.W.] the rest of the day for any ailments or discomforts.  [A.W.] was her normal self."

The Agency also reported A.W.'s current placement "is very stable and the prospective adoptive parents have met her developmental, medical and emotional needs."  A.W. appeared "very happy forming significant attachments to her prospective adoptive parents" and had "grown physically and developmentally."

The Agency ultimately recommended the termination of Mother and Father's parental rights to allow adoption as the permanent plan.  It found there "is not a compelling reason for determining that termination of parental rights would be

detrimental to [A.W.].  [A.W.] looks to the prospective adoptive parents to have her daily physical and emotional needs met.  The benefit [A.W.] would gain in a permanent home with her prospective adoptive parents far outweighs any beneficial relationship she may have with her biological parents."

The Agency also submitted a pretrial memorandum, noting that while A.W. seems happy and enjoys visits with Mother and Father, she "would not be affected by the loss of these visits.  When there is not a visit for whatever the reason, [A.W.] is not impacted negatively.  When there is a visit, [A.W.] is able to incorporate back into her [foster] family life without interruption or discomfort."

*Section 366.26 hearing*

At the contested section 366.26 hearing, Mother and Father testified about their visits with A.W. and bond with A.W.  A case aide and the social worker also testified regarding these visits.

At the conclusion of the hearing, the juvenile court found "by clear and convincing evidence, that it [was] likely [A.W.] will be adopted."  The court found the beneficial parental relationship exception did not apply and terminated parental rights.  While Mother and Father had "very appropriate, pleasant visits" with A.W., the court found "there's no other evidence to indicate that [A.W.] is harmed when she's not with them."  The court found that Mother and Father failed to show that A.W. would benefit from continuing a relationship with them, and noted that proving a beneficial relationship "is a very difficult hurdle for the parents to overcome in a case like this" where "they have never lived with [A.W.] and where she is very young, pretty much preverbal and they have to rely upon what they see at visitation."  The court observed: "I just don't think the parents have demonstrated or

4

shown that they have the kind of substantial, positive, emotional attachment or that [A.W.] does to them that it is protected by the beneficial-relationship exception."

The juvenile court also found that A.W. would not suffer harm if the parental relationship terminated. The court noted that "it's hard for parents with a child this young to make that showing. And I don't believe you've made that showing." The court concluded that "[o]n balance adoption is the best plan for [A.W.] where she will have a permanent, forever home."

DISCUSSION

Mother and Father contend the juvenile court erred when it found the beneficial parental relationship exception did not apply. We disagree.

At a section 366.26 hearing, the juvenile court selects and implements a permanent plan for the dependent child. (*In re Caden C.* (2021) 11 Cal.5th 614, 630 (*Caden C.*).) "To guide the court in selecting the most suitable permanent arrangement, the statute lists plans in order of preference," with adoption being the " 'permanent plan preferred by the Legislature.' " (*Ibid*; *In re D.O.* (2016) 247 Cal.App.4th 166, 173.) The court must determine "by a clear and convincing evidence standard, that it is likely the child will be adopted." (§ 366.26, subd. (c)(1).) If so, the court "shall terminate parental rights" and allow for adoption, unless a parent can show that termination would be detrimental to the child for one of the statutorily enumerated exceptions. (*Id.*, subd. (c).)

The beneficial parental relationship exception at issue here applies when the parents prove "(1) regular visitation and contact, and (2) a relationship, the continuation of which would benefit the child such that (3) the termination of parental rights

5

would be detrimental to the child." (*Caden C.*, *supra*, 11 Cal.5th at p. 631, italics omitted.) Mother and Father must prove these elements based on a preponderance of the evidence. (*Id.* at p. 636.)

We review for substantial evidence the first two elements—consistent visitation and benefit from continuing the relationship. (*Caden C.*, *supra*, 11 Cal.5th at pp. 639-640.) For the third element—detriment to the child if the relationship is terminated—we review for substantial evidence factual determinations such as "specific features of the child's relationship with the parent," "the harm that would come from losing those specific features," and "the benefit of adoption." (*Id.* at p. 640.) In so doing, we do " 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts.' [Citation]" (*Ibid.*) We review for abuse of discretion the "delicate balancing" of "the harm of losing the relationship against the benefits of placement in a new, adoptive home." (*Ibid.*) "A court abuses its discretion only when ' " 'the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination' " ' " such that " ' " 'no judge could reasonably have made the order.' " ' " (*Id.* at p. 641.)

### Regular visitation

Here, there is no dispute Mother and Father met the first element of regular visitation and contacts. Mother and Father dispute the court's findings that they failed to meet the second and third elements.

### Beneficial relationship

In assessing the second element, the court determines whether the child has a "substantial, positive, emotional attachment to the parent—the kind of attachment implying that

the child would benefit from continuing the relationship." (*Caden C.*, *supra*, 11 Cal.5th at p. 636.) The court looks to several factors, "such as '[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parents and the child, and the child's particular needs.' [Citation.]" (*Id.* at p. 632.) The focus is on the child, and the courts "often consider how children feel about, interact with, look to, or talk about their parents." (*Ibid.*)

A "showing the child . . . derive[s] *some* benefit from continuing a relationship maintained during periods of visitation" is not a sufficient ground to depart from the statutory preference for adoption. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466.) Friendly or affectionate visits are not enough. (*Id.* at p. 468.)

Substantial evidence supports the juvenile court's finding that the parents did not establish a beneficial relationship. A.W. was taken into protective custody when she was born, and she was only eight months old at the time of the section 366.26 hearing. She never lived with Mother and Father, as she was placed with the foster parents after being discharged from NICU. Because of these circumstances, the only observable interactions between Mother and Father and A.W. occurred during supervised one-hour visits that occurred twice a week. Although these visits were "pleasant" and Mother and Father acted "appropriate[ly]," this evidence was short of showing that A.W. had the type of "substantial, positive, emotional attachment" that met the second element of the exception.

*Detriment of termination*

Even if Mother and Father could establish a beneficial relationship with A.W., the juvenile court found that they did not

7

establish that termination of their parental rights would be detrimental to A.W. We agree.

In assessing detriment resulting from severing the parent-child relationship, the court "acts in the child's best interest in a specific way: it decides whether the harm of severing the relationship outweighs 'the security and the sense of belonging a new family would confer.' [Citation.]" (*Caden C.*, *supra*, 11 Cal.5th at p. 633.) Courts must determine "how the child would be affected by losing the parental relationship—in effect, what life would be like for the child in an adoptive home without the parent in the child's life." (*Ibid*.)

Here, the trial court did not abuse its discretion in finding that the harm in terminating parental rights did not outweigh the stability of adoption. A.W. was an infant and had been living with her foster parents her entire life. Moreover, there was no evidence that terminating Mother and Father's parental rights would be detrimental to A.W. (Contra *Caden C.*, *supra*, 11 Cal.5th at p. 633 [bonding study showed evidence of detrimental effects, which included "emotional instability and preoccupation leading to acting out, difficulties in school, insomnia, anxiety, or depression"].) Instead, the evidence showed that after visits with Mother and Father, A.W. was "able to incorporate back into her [foster] family life without interruption or discomfort."

Because we conclude the juvenile court did not err in finding the beneficial parental relationship exception did not apply, there was no error in terminating parental rights.

DISPOSITION

The order terminating parental rights is affirmed.

NOT TO BE PUBLISHED.


BALTODANO, J.


We concur:


GILBERT, P. J.


YEGAN, J.

9

Tari L. Cody, Judge

Superior Court County of Ventura

_____

Melissa A. Chaitin, under appointment by the Court of Appeal, for Defendant and Appellant D.W. (Father).

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant B.W. (Mother).

Tiffany N. North, County Counsel, Joseph J. Randazzo, Assistant County Counsel, for Plaintiff and Respondent.